**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BRIAN MARK FARMER, #343-010           *

        Petitioner           *

   v.           *           Civil Action No. GLR-12-163

WILLIAM O. FILBERT, et al.           *

        Respondents           *

            ***

**MEMORANDUM**

Pending is Brian Mark Farmer's ("Farmer") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a Response and a Supplemental Response (ECF 6 and 10), to which Farmer has replied. ECF 14. After considering the pleadings, exhibits, and applicable law, the Court finds a hearing unnecessary. See Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts"; see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (stating there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)).

**FACTUAL AND PROCEDURAL BACKGROUND**

Farmer, who is currently an inmate at the Maryland Correctional Institution-Jessup,[1] is challenging his convictions after a jury trial in the Circuit Court for Baltimore County on November 14 and 15, 2006, for theft, fleeing and eluding, and driving on a revoked license. On April 13, 2007, the court sentenced him to eighteen years of imprisonment, of which five years were suspended.

---

[1] See http://www.dpscs.state.md.us/inmate/search.do?searchType=detail&id=340334.

Evidence adduced at trial showed at about noon on June 11, 2006, Dorothea Rivers and her boyfriend Antonio Hardy, stopped at a Royal Farms gas station. Hardy, who was driving Rivers's Dodge Durango, waited outside to pump the gas while Rivers went inside to pay. Ex. 2.[2] Before pumping, Hardy took their dog out of the vehicle for a walk. The keys were left in the ignition.

While inside the store paying for the gas, Rivers realized that the Durango was no longer parked at the gas pump. She never saw the individual who took the vehicle. Hardy testified that while he was walking the dog, he saw someone run toward the Durango, jump inside, and drive away. Hardy gave chase, and when he caught up to the Durango at a red light, saw the driver until the light turned green. Hardy testified the driver was about twenty-five feet away.

>[Prosecutor]: How good a look did—did you get of that person?
>
>[Hardy]: 75 percent look. I didn't get a hundred percent look. I got height, dirty, look at what he had on.
>
>[Prosecutor]: Could you describe to the ladies and gentlemen of the jury what this person looked like?
>
>[Hardy]: White male, six feet tall 5 o'clock shadow, dirty white t-shirt.
>
>[Prosecutor]: And sir—do you believe if you saw that person again you would recognize him?
>
>[Hardy]: Yes, sir.
>
>[Prosecutor]: Do you see that person in the courtroom today?
>
>[Hardy]: Yes sir.

Id. pp. 65-66. Hardy then identified Brian Mark Farmer.

---

[2] All exhibits were filed by Respondents unless otherwise noted.

2

Allen McLauren testified that he was at the gas pump across from the Durango on June 11, 2006, when he observed Rivers, Hardy, and the dog as they exited the vehicle. He testified that he then observed a different individual enter the Durango. He heard "screaming" and "hollering" from a man to his right, as the individual in the Durango struck a white pick-up truck and drove away. McLaurin jumped in his vehicle and followed the Durango. While in pursuit, McLaurin called 911 and provided the license plate number of the Durango to the dispatcher. McLaurin followed the Durango for some fifteen minutes. McLauren gave the following testimony:

> [Prosecutor]: [...W]here were you in relation to the Dodge Durango…?
>
> [McLauren]: I was on one side of the pump, the Durango was on the other side, the inside where the gas tanks are, um, on the driver side. So, you know, I'm right there at the pump to pay with a credit card. I could see this gentleman when he walked around from the back of the other Durango and went to get in the driver's door, I was standing right there, looked right at him.
>
> [Prosecutor]: Mr. McLaurin do you believe if you saw that person again you would recognize him?
>
> [McLaurin]: I fell [sic] pretty confident in it.
>
> [Prosecutor]: Do you see that person in the courtroom today?
>
> [McLaurin]: Yes, slightly different, but yes.
>
> [Prosecutor]: Okay. Well, First of all, could you identify the person that you saw on June 11th?
>
> [McLaurin]: The person that I saw, it was a white male, um, had—wasn't clean shaved, had like some I would call a 5 o'clock shadow of some sort, real scruffy, like a beard, not a full beard. Low, low, very low hair cut, light colored shirt, some type of shorts, maybe denim shorts or something.
>
> [Prosecutor]: Do you see that person today?

3

[McLaurin]: Yes.

Id. pp. 73-74. McLaurin then identified Farmer, observing Farmer's hair had grown, he was clean shaven, and he was better dressed. Id. p. 75.

Detective Christopher Hodnicki ("Hodnicki") testified that on June 11, 2006, at approximately 12:30, 12:38, he responded to a dispatch of a stolen black Dodge Durango. He observed a vehicle whose description matched that of the stolen vehicle, and whose license plate matched the tag number provided by the dispatcher. Hodnicki initially attempted a traffic stop by activating his emergency equipment. When the driver did not stop, Hodnicki pursued the vehicle. Hodnicki followed the Durango, never losing sight of it. He followed the Durango down a "single lane road, [into a] cul de sac area," where the Durango collided with the "bridge embankment" and fell into a stream. Id. p. 89. From a distance of approximately ten feet, Hodnicki observed "a white male, approximately six-foot tall, wearing [a] long white t-shirt" and "blue jean cutoff shorts" leave the vehicle and flee. Hodnicki testified that the man looked right at him. Id. p. 91. At trial, Hodnicki identified Farmer as the individual he saw fleeing the scene. Id.

According to Hodnicki, "a brief foot pursuant [sic] incurred [sic]," but after he fell and his radio and other equipment got wet, he lost sight of appellant. He explained, "[N]ot having any radio communication, I felt for officer safety to cease the pursuit." Id. p. 92. Hodnicki radioed other police units of his observations and some 10-15 minutes later responded to a location about a quarter of a mile away and identified Farmer, who was being detained by Lieutenant Michael Lauenstein ("Lauenstein"). Hodnicki identified Farmer in court as the person he had chased and who was later detained. Id. pp. 91 and 96.

Lt. Lauenstein testified that on June 11, 2006, he heard the dispatch of the car theft and, after listening to the description of the pursuit on the radio, he left the police station and went to look for the man after he heard that there was an accident. Id. p. 112. Lauenstein explained that he had lived in the area since 1960 and knew that if a person went north through the woods about 1/8 to 1/4 of a mile from where the accident occurred, the person would be on Gum Spring Road. Id. Lauenstein testified: "As I was going down Gum Spring, I saw a white male run out of the woods with a long sleeve white shirt on, cut-off blue jeans or blue jean shorts, soaking wet and running, huffing and puffing." Id. p. 113. Lauenstein was in an unmarked vehicle but in uniform. He exited the vehicle and yelled, "Stop." At this point the man stopped and put up his hands and walked back to the officer. Id. Lauenstein testified that he waited for other police officers to arrive and detained Farmer until then. Id. p. 114. At trial, Lauenstein identified Farmer as the man he detained. Id.

Farmer filed a direct appeal which was dismissed by the Court of Special Appeals of Maryland on its own motion as premature. Exs. 1 and 5. Farmer did not request further review of this determination.

On July 16, 2008, Farmer filed a pro se Petition for Post-Conviction relief which was amended twice, once pro se and later by his post-conviction counsel. As amended and supplemented, the Petition raised claims of ineffective assistance of trial and appellate counsel, trial court error, and prosecutorial misconduct. Exs. 6-9.[3]

---

[3] Farmer's pro se Petition and amendment claims included: (A) the police committed misconduct by (1) illegally arresting him, (2) making false allegations, (3) not investigating critical evidence, and (4) failing to disclose evidence; (B) trial counsel was ineffective for (1) exposing him in court prior to a line-up, (2) fabricating allegations of guilt, (3) failing to investigate the case and prepare a defense, (4) allowing him to be observed in court by a testifying witness, (5) failing to discuss the case with him, (6) failing to provide him with discovery, (7) allowing Officer Lauenstein to testify, (8) failing to address inconsistent witness testimony, (9) failing to perfect his appellate rights, (10) failing to suppress evidence, (11) making improper opening and closing argument, (12) failing

The post-conviction hearing was held on June 25, 2009, and by order filed July 1, 2009, the Circuit Court for Baltimore County granted Farmer the right to file a belated direct appeal and the right to file a belated motion for modification of sentence; all other asserted post-conviction claims were denied. Ex. 1 p. 10; Ex. 9. Most importantly, for the purposes of assessing whether the claims presented are procedurally defaulted, Farmer did not file an application for leave to appeal the decision.

Pursuant to the Post-Conviction Court's Order, Farmer, through counsel, filed a Motion for Modification of Sentence and a belated direct appeal to the Court of Special Appeals. Farmer's Motion for Modification of Sentence was filed on July 30, 2009, and denied on August 4, 2009. Ex. 1 p. 11.

On belated direct appeal, Farmer raised two questions: 1) Whether his sentence reflected by the docket entries was inconsistent with the sentence pronounced in open court and is illegal; and 2) Whether his convictions rested upon impermissibly suggestive identifications of Farmer as the criminal agent. Exs. 10, 11, and 12. In an unreported opinion filed on November 24, 2010, the Court of Special Appeals affirmed Farmer's convictions and sentence. Additionally, the Court found his allegation of error concerning the identifications was unpreserved and without merit. Id. p. 15.

---

to make an adequate motion for judgment of acquittal, (13) failing to file a timely notice of appeal, and (14) failing to file a timely motion for modification of sentence; (C) the trial court erred by (1) forcing him to trial without adequate counsel and discovery, (2) allowing Officer Lauenstein to testify, (3) denying him a fair trial, (4) failing to advise him properly of his appellate rights, (5) failing to conduct a hearing on identifications, and (6) denying his motion to suppress the charging documents; (D) the prosecutor committed misconduct by (1) failing to provide discovery, (2) failing to conduct a line-up or photo array, (3) maliciously prosecuting him, and (4) failing to disclose the circumstances of his apprehension by Officer Lauenstein.; (E) appellate counsel and post-conviction counsel were ineffective; (F) the Court of Special Appeals erred in dismissing his appeal; and (G) the trial judge, prosecutor and his trial counsel colluded against him to allow a surprise witness. Exs. 6-9.

Farmer, through his counsel, filed a Petition for a Writ of Certiorari asking the Court of Appeals of Maryland to review one question: whether his sentence of eighteen years, on four counts, with five years suspended was illegal under state law. Exs. 13 and 15. Farmer filed a second Petition for Writ of Certiorari, this one pro se, with additional claims that: (A) he was not provided with a preliminary hearing or the discovery of evidence; (B) trial counsel was ineffective for (1) not obtaining discovery, (2) conspiring with the prosecution and the court to allow Officer Lauenstein's testimony into evidence in violation of his right to due process, (3) not objecting to witness Hardy's testimony, (4) not objecting to impermissible identifications, and (5) conceding guilt and lending credence to witness McLaurin's testimony; and (C) the prosecutor committed misconduct by (1) introducing impermissibly suggestive identifications, and (2) making improper comments in opening statement and closing argument. Ex. 15. On March 21, 2011, the Court of Appeals of Maryland denied review. Ex. 14.[4]

## CLAIMS PRESENTED

Farmer claims (A) he was not provided with a preliminary hearing or the discovery of evidence; (B) trial counsel was ineffective for (1) not obtaining discovery, (2) conspiring with the prosecution and the court to allow Officer Lauenstein's testimony into evidence in violation of his right to due process, (3) not objecting to witness Hardy's testimony, (4) not objecting to impermissible identifications, and (5) conceding guilt and lending credence to witness McLaurin's testimony; (C) the prosecutor committed misconduct by (1) introducing impermissibly suggestive identifications, and (2) making improper comments in opening statement and closing argument; and (D) his sentence amounts to a denial of due process. ECF 1, Petition.

---

[4] The State's response addressed only the Petition for Writ of Certiorari that was filed by counsel. Exs. 15 and 16.

**ANALYSIS**

Respondents are seeking dismissal of Farmer's claims as procedurally defaulted. The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." Picard v. Connor, 404 U.S. 270, 276; see also 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. Coleman v. Thompson, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); Murray v. Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); Murch v. Mottram, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); Bradley v. Davis, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. See Schlup v. Delo, 513 U.S. 298, 314 (1995); Murray, 477 U.S. at 495–96; Breard v. Pruett, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." Breard, 134 F.3d at 620 (quoting Murray, 477 U.S. at 488) (internal quotation marks omitted).

8

Farmer's claims, insofar as they were raised in his Post-Conviction Petition,[5] were denied by the Circuit Court for Baltimore County, and were not pursued in an application to appeal. Memorandum, supra p. 6. Consequently, none of these claims were presented before all appropriate state post-conviction courts and they are procedurally defaulted.

Farmer's claim that his sentence violates due process is also procedurally defaulted because he raised no constitutional challenges to his sentence in state court.

Farmer does not claim cause and prejudice or actual innocence to excuse procedural default by showing cause and prejudice or actual innocence. Additionally, the claims Farmer raised in his pro se Petition for Writ of Certiorari were not presented on direct appeal. Under Maryland law, appellate review of a post-conviction court ruling may be initiated by filing an Application for Leave to Appeal to the Court of Special Appeals within thirty days of the Circuit Court's judgment. See Md. Code Ann., Crim. Pro. Art. § 7-109 (2008). Farmer did not pursue this state remedy. Farmer's efforts to reintroduce these claims in a Petition for Writ of Certiorari does not serve to reverse procedural default.

Even if his claims were not procedurally defaulted, Farmer does not satisfy the federal habeas corpus statute's "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447, 455 (2005). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of

---

[5] The Court is mindful that Farmer is a self-represented litigant whose pleadings are entitled to liberal construction. Nevertheless, the Court, like Respondent, has found his litany of claims in the pro se portions of his Post-Conviction Petition difficult to discern. See ECF 6 p. 15.

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Under 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

Where a petitioner is requesting habeas relief on the grounds of ineffective assistance of counsel, it must be shown that: 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." Id. at 688. To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceedings would have been different. See Strickland, 466 U.S. at 687, 694.  "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Id. at 693.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. Strickland, 466 U.S. at 697.

In this case, the state post-conviction court found none of Farmer's claims, other than his claims that counsel was ineffective for failing to perfect his direct appeal and failing to file a motion for modification of sentence, provided a basis for post-conviction relief.  The record amply supports the state post-conviction court's decision.  Notably, the Post-Conviction Court expressly found that Farmer's defense attorney had performed effectively in the case. Ex. 9 p. 4. The Court also emphasized that Farmer provided no proof of prejudice to satisfy the Strickland standard.  The court stated:

> The evidence in this case is overwhelming that the Defendant is the car thief. And given the direct evidence and the circumstantial evidence, [defense counsel] could have been Houdini and the outcome of the case wouldn't have been any different.

Ex. 9 p. 3. Similarly, Farmer provides no grounds to disturb the Post-Conviction Court's rejection of his prosecutorial misconduct claims.  For these reasons, Farmer has not sustained his burden to show the state post-conviction court unreasonably applied federal law as determined by the Supreme Court or rendered a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding. Thus, the claims do not warrant federal habeas relief.

Equally unavailing are Farmer's claims that he is serving an illegal sentence and was prejudiced when the prosecutor committed misconduct by introducing impermissibly suggestive identifications. Farmer's challenge to his sentence is based on state law and does not present a federally cognizable claim for habeas corpus relief. 28 U.S.C. § 2254(a) (authorizing a federal court to entertain a state prisoner's habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Farmer did not present the same claim of prejudice of evidence on direct appeal or in his pro se Petition for Writ of Certiorari. The claim on direct appeal addressed alleged trial court error in admitting identification evidence, not prosecutorial misconduct. The claim raised in Farmer's pro se petition for a writ of certiorari was that the prosecution used impermissibly suggestive in-court identifications to obtain his convictions. This was determined to be procedurally defaulted by the Court of Special Appeals because there was no objection to admitting this evidence at trial. Consequently, this claim is procedurally defaulted, and this claim provides no grounds for federal habeas relief. Farmer does not meet his burden to satisfy the highly deferential standard of review required for federal habeas relief and even if not procedurally defaulted, the claim fails on its merits. See 28 U.S.C. § 2254(d).

**CERTIFICATE OF APPEALABILITY**

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has failed to make a substantial showing that he was denied a constitutional right, and this Court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a Certificate of Appealability shall not issue.

**CONCLUSION**

For the foregoing reasons, the Court concludes the Petition provides no grounds for habeas corpus relief. A separate Order follows denying the Petition and declining to issue a Certificate of Appealability.

June 26, 2014                                                                 /s/

                                                                 George L. Russell, III
                                                                 United States District Judge